**Michael J.B. HENRY & Vickie A. Henry, on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**ASSOCIATES HOME EQUITY SERVICES, INC. (f/k/a Ford Consumer Finance Company, Inc.), Defendant.**

**No. CV 99–04143 DT(AIJx).**

United States District Court, C.D. California.

Jan. 7, 2002.

John C. Taylor, Greene, Broillet, Taylor, Wheeler & Panish, Santa Monica, CA, Donald F. Hildre, Dougherty, Hildre, Dudek & Haklar, San Diego, CA, Ronald S. Goldser, Karen J. Cody–Hopkins, J. Gordon Rudd, Jr., Timothy J. Becker, Zimmerman Reed, Minneapolis, MN, Carleton B. Crutchfield, Robert Mitsch, Mitsch & Crutchfield, St. Paul, MN, for Plaintiffs.

Andrew W. Caine, Pachulski, Stang, Ziehl, Young & Jones, Los Angeles, CA, Scott J. Hyman, John B. Sullivan, Mary K. Sullivan, Severson & Werson, Gregory C. Nuti, McNutt & Litteneker, San Francisco, CA, for Defendant.

## ORDER **DENYING** PLAINTIFFS MICHAEL J.B. HENRY AND VICKIE A. HENRY'S MOTION FOR CLASS CERTIFICATION

TEVRIZIAN, District Judge.

### I. *Background*

#### A. *Factual Summary*

This purported class action is brought by Plaintiffs Michael J.B. Henry ("M.Henry") and Vickie A. Henry ("V.Henry") (collectively, "Plaintiffs") against Defendant Associates Home Equity Services, Inc. (f/k/a/ Ford Consumer Finance Company, Inc. ("Defendant" or "Associates")). Plaintiffs' specific allegations relate to an underlying bankruptcy action before the Honorable Samuel L. Bufford of the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court") entitled *In re Michael J.B. Henry and Vickie A. Henry,* Case Number LA 97–54348–SB (the "Bankruptcy Action").

The following facts are alleged in the First Amended Complaint:

Plaintiffs M. Henry and V. Henry, husband and wife who currently reside at 1652 West 204th St. # 2, Torrance, CA 90501, bring this action on behalf of themselves and all others similarly situated ("class members"). *See* First Amended Complaint, ¶ 5.

Defendant is a Texas corporation, with its principal place of business located in Irving, Texas. *See id.* at ¶ 6. Defendant is a wholly-owned subsidiary of the public corporation known as Associates First Capital Corporation, a Delaware corporation, and is primarily engaged in the servicing of residential mortgage loans. *See id.*

On November 19, 1997, Plaintiffs filed their chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Central District of California commencing the Bankruptcy Action, case number LA 97–54348–SB. *See id.* at ¶ 8. Plaintiffs' bankruptcy petition listed a pre-petition obligation of $119,900 (the "Debt"). *See id.* at ¶ 9. The loan number for the Debt was 0–304–53920331302 (the "Account"). *See id.* The Debt was secured by a first trust deed lien on the primary residence of Plaintiffs located at 1507 West 85th, Los Angeles, California 90047 (the "Home"). *See id.* Prior to the filing date of the chapter 7 bankruptcy petition on November 19, 1997, Plaintiffs had made monthly payments to Defendant in the amount of $1,229.39 (the "Monthly Payments"). *See id.* Defendant received notice of Plaintiffs'

Bankruptcy Action on or before November 29, 1997. *See id.*

On the filing date, November 19, 1997, an automatic stay pursuant to 11 U.S.C. § 362 took effect and remained in effect until the discharge order. *See id.* at ¶ 10. The automatic stay enjoined all acts to collect, assess, or recover the Debt and any attempt to enforce the mortgage against the Home. *See id.* Despite knowledge of the Bankruptcy Action and the automatic stay, Defendant wilfully continued its debt collection activities. *See id.*

On December 29, 1997, a creditors meeting, pursuant to 11 U.S.C. § 341, was held. *See id.* Defendant failed to attend. *See id.*

On March 9, 1998 (the "Discharge Date"), the Bankruptcy Court discharged Plaintiffs' bankruptcy. *See id.* Pursuant to 11 U.S.C. § 524(a)(2), the discharge order automatically triggered a permanent injunction on all future collection activities regarding discharged debt and permanently enjoined Defendant from collecting or attempting to collect the Debt as personal liability of Plaintiffs. *See id.* The Bankruptcy Action was closed on March 17, 1998. *See id.*

Before and after the Discharge Date, Defendant collected and continued collection activities during the Bankruptcy proceedings such as telephoning Plaintiffs and sending monthly collection statements, payment default notices and/or account notices including, but not limited to, those dated December 9, 1997, January 9, 1998, February 3, 1998, July 17, 1998, and August 4, 1998. *See id.* at ¶ 11. Defendant failed to petition the Bankruptcy Court for a temporary lift of the automatic stay to allow the collection contact with Plaintiffs that occurred prior to the Discharge Date. *See id.*

Defendant failed to take reasonable steps to obtain a reaffirmation agreement relating to the Debt from Plaintiffs pursuant to section 524(c) of the Bankruptcy Code, and therefore, Defendant failed to file a reaffirmation agreement relating to the Debt with the Bankruptcy Court as required by section 524(c) of the Bankruptcy Code. *See id.* at ¶ 12.

On the Discharge Date, all of Plaintiffs' pre-petition debts were discharged pursuant to an order of the Bankruptcy Court. *See id.* at ¶ 13. As a result of this discharge order and the statutorily mandated permanent injunction arising from the order, all creditor debt collection activities were enjoined pursuant to section 524(a)(2) and (c). *See id.*

Defendant never informed Plaintiffs that they would no longer be personally liable for the pre-petition Debt after the Discharge Date. *See id.* at ¶ 14.

Before and after the Discharge Date, Defendant solicited and collected the Monthly Payments from Plaintiffs via wire and U.S. mail for amounts Defendant claimed were still due on the Debt. *See id.* at ¶ 15. Contact by Defendant included monthly collection statements and/or account notices such as the ones dated December 9, 1997, January 9, 1998, and February 3, 1998. *See id.* Defendant also sent letters, payment coupon books, made demands for cash payments, and had agents undertake collection activities from Plaintiffs. *See id.* Defendant's collection communications were standard written documents generated according to standard policies and procedures using standard forms and were particularized only to the extent of adding Plaintiffs' name, address, account number, and amount of debt and payments due thereon. *See id.*

Pursuant to the unlawful collection efforts of Defendant in pursuit of the discharged Debt, Plaintiffs made payments of

$1,300.00 on November 29, 1997, $1,230.00 on January 30, 1998, a payment of an indeterminate amount in February of 1998, $1,240.00 on March 5, 1998, $1,200.00 in April of 1998, $1,200.00 on May 29, 1998, and possibly others, for a total of, at least, $6,170.00. *See id.* at ¶ 16.

From November of 1997 through foreclosure on November 17, 1998, Defendant began a series of aggressive collection efforts to collect the discharged Debt from Plaintiff by telephoning or sending collection letters, notices, and/or demands for payment of the discharged Debt to Plaintiffs through the U.S. Mail. *See id.* at ¶ 17. Such letters contained misleading statements that led Plaintiffs to believe that they were still personally liable to pay the discharged Debt, and also misstated the fact that Plaintiffs owed Defendant a balance due on the Debt. *See id.*

Beginning in November of 1997, Defendant began to accrue and assess late payment penalties and/or fees against Plaintiffs for non-payment of the Debt. *See id.*

For a number of years and a substantially longer period of time, Defendant has engaged in a common course of conduct and a pattern and practice to collect dischargeable debt from thousands of individuals during bankruptcy despite the automatic stay. *See id.* at ¶ 20. Defendant also engaged in a common course of conduct and a pattern and practice to collect discharged debt despite the statutorily mandated permanent injunction pursuant to 11 U.S.C. § 524. *See id.*

### B. *Procedural History.*

On April 20, 1999, Plaintiffs filed a Class Action Complaint and a Demand for Jury Trial with this Court[1]. This case was originally assigned to the docket of United States District Judge Edward Rafeedie, case number CV 99–04143 ER (AIJx). On April 28, 1999, this case was reassigned to the docket of United States District Judge Dickran Tevrizian, case number CV 99–04143 DT (AIJx).

On May 28, 1999, Plaintiffs filed a First Amended Complaint Class Action and a Demand for Jury Trial alleging the following counts:

   (1) Willful Violation of the Bankruptcy Code Reaffirmation Provisions 11 U.S.C. § 524(c);

   (2) Willful Violations of the Automatic Stay Provisions of 11 U.S.C. § 362;

   (3) Willful Violations of the Discharge Injunction of 11 U.S.C. § 524;

   (4) Contempt of Court for Violation of the Injunction of 11 U.S.C. §§ 362 and 524(a)(2);

   (5) Violation of the Racketeer Influence and Corrupt Organizations Act ("RICO");

   (6) Violation of the Fair Debt Collection Practices Act ("FDCPA");

   (7) Declaratory Relief;

   (8) Request for Injunctive Relief;

   (9) Demand for Accounting; and

   (10) Attorneys' Fees.

(the "First Amended Complaint").[2]

Also on May 28, 1999, Plaintiffs' RICO Statement was filed with this Court.

---

[1]. On June 28, 1999, Plaintiffs filed a related Class Action Complaint and Demand for Jury Trial with this Court in an action entitled *Michael J.B. Henry and Vickie A. Henry, On Behalf of Themselves and All Others Similarly Situated, Plaintiffs v. Sun West Mortgage Company, Inc., Defendant,* case number 99–06589 (bankruptcy case number LA 97–54348–SB).

[2]. As a result of Plaintiffs' requests, the RICO Count and the Fair Debt Collection Practices Act Count have been dismissed. The remaining counts are therefore Counts 1, 2, 3, 4, 7, 8, 9 and 10.

On May 21, 1999, Plaintiffs filed a Motion to Refer Bankruptcy Matters to United States Bankruptcy Court, which was granted by this Court on July 12, 1999 as to six issues. The remainder of this action was stayed by this Court.

On July 20, 1999, the Bankruptcy Court granted Plaintiffs' Motion to Reopen the Bankruptcy Action.

On June 22, 1999, Defendant filed an Answer to First Amended Complaint.

On June 25, 1999, Defendant filed a Demand for Jury Trial.

On July 27, 1999, Defendant filed a Motion for Relief from Order Pursuant to Federal Rules of Civil Procedure 60(a), 60(b)(1) and 60(b)(6).

On August 24, 1999, this Court entered an Order Granting Defendant's Motion for Relief from Order Pursuant to Federal Rules of Civil Procedure 60(a), 60(b)(1) and 60(b)(6).

On January 12, 2000, Defendant filed a Motion/Petition for Withdrawal of the Reference From the Bankruptcy Court, or in the Alternative, for Writ of Mandate.

On January 13, 2000, Defendant filed a Motion for Judgment on the Pleadings and to Strike Class Allegations.

On January 24, 2000, Plaintiffs filed a Motion to Refer Class Certification to the United States Bankruptcy Court.

On February 8, 2000, this Court entered an Order (1) Denying Defendant's Motion/Petition for Withdrawal of the Reference From the Bankruptcy Court, or in the Alternative, for Writ of Mandate; (2) Granting Defendant's Request for Judicial Notice; (3) Denying as Moot Defendant's Motion for Judgment on the Pleadings; and (4) Denying Plaintiffs' Motion to Refer Class Certification to the U.S. Bankruptcy Court.

On July 20, 2000, Defendant filed a Petition for Writ of Mandate.

On August 30, 2000, this Court entered an Order Granting Defendant's Petition for Writ of Mandate; Vacating the Bankruptcy Court's August 1, 2000, Order Re: Discovery, Attorney–Client Privilege and Hearing Date; remanding for Further Analysis.

On August 8, 2000, Plaintiffs filed a Status Report.

On August 24, 2001, the Bankruptcy Court entered its Opinion.[3]

On September 18, 2001, Plaintiffs filed a Motion to Reopen Case and to Allow Class Discovery.

On October 17, 2001, this Court entered an Order Granting Plaintiffs' Motion to Reopen Case and Denying Class Discovery at This Time.

On October 30, 2001, Plaintiffs filed a Motion for Class Certification, which is currently before this Court.

On December 17, 2001, Defendant filed a Motion for Judgment on the Pleadings and to Strike Class Allegations, which this Court continued to for January 28, 2002 for hearing.

## II. Discussion

### A. Standard

■ Federal Rule of Civil Procedure 23 governs class actions. A class action may be brought if: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative

---

**3.** This Court takes judicial notice of the Bankruptcy Court's opinion.

parties will fairly and adequately protect the interests of the class." If these prerequisites are satisfied, then the further criteria set forth in Rule 23(b) must also be met:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interest; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

If any of the requirements are not met, certification must be denied. *See Conant v. McCaffrey,* 172 F.R.D. 681, 691 (N.D.Cal.1997)(citing *Rutledge v. Electric Hose & Rubber Co.,* 511 F.2d 668, 673 (9th Cir.1975)). As the proponent of class certification, plaintiffs bear the burden of proving that all of Rule 23's requirements have been satisfied. *See Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 614, 117 S.Ct. 2231, 2245, 138 L.Ed.2d 689 (1997).

**B.** *Requests for Judicial Notice*

■ Plaintiffs ask this Court to take judicial notice of the following documents: Plaintiffs' Voluntary Petition in Bankruptcy, filed November 19, 1997, the Docket for Plaintiffs' Bankruptcy from the Bankruptcy Court, Plaintiffs' Notice of Commencement of Case Under Chapter 7 of the Bankruptcy Code, Notice of Commencement of Case in the Bankruptcy Court, and Bankruptcy's Court's Discharge of Debtor notice dated March 9, 1998.

Defendant asks this Court to take judicial notice of fourteen documents, attached to its Request for Judicial Notice. (*See* Defendant's Request for Judicial Notice ("RJN"), dated December 26, 2001, Exhs. A—O.)

A court must take judicial notice if a party requests it and supplies the court with the requisite information. Fed. R.Evid. 201(d). "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b). This Court may take judicial notice of facts outside the pleadings without converting the motion to one for summary judgment.

*See Mack v. South Bay Beer Distributors,* 798 F.2d 1279, 1282 (9th Cir.1986)(citing *Sears, Roebuck & Co. v. Metropolitan Engravers, Ltd.,* 245 F.2d 67, 70 (9th Cir. 1956)).

■ This Court may take judicial notice of its own records, and documents that are public records and capable of accurate and ready confirmation by sources that cannot reasonably be questioned. *See MGIC Indem. Corp. v. Weisman,* 803 F.2d 500, 504 (9th Cir.1986) (courts may take judicial notice of matters of public record outside the pleadings); *United States v. Wilson,* 631 F.2d 118, 119 (9th Cir.1980)("In particular, a court may take judicial notice of its own records in other cases, as well as the records of an inferior court in other cases.")

This Court has reviewed the documents submitted by both parties in their requests for judicial notice, and based on the standard set forth, this Court grants Plaintiffs' and Defendant's Requests for Judicial Notice.

## C. *Analysis*

■ In seeking class certification, Plaintiffs propose the following class definition:

All individuals in the United States:

(a) who filed a Chapter 7 petition for relief under the Bankruptcy Code;

(b) as to whom Defendant received notice of the Bankruptcy;

(c) who, subsequent to the filing of the bankruptcy petition, did not reaffirm the debt pursuant to 11 U.S.C. § 524(c), did not redeem the collateral pursuant to 11 U.S.C. § 722 or did not surrender to Defendant the collateral; and

(d) from whom payments on such pre-petition debt or alleged debt were solicited post-petition by Defendant beyond mere regular monthly statements on the lien.

Plaintiffs argue that their proposed class action meets the requirements of Rule 23(a) and Rule 23(b)(3).

In opposition, Defendant argues that Plaintiffs cannot meet the Rule 23(a) requirements of commonality, typicality or adequacy of representation, or the Rule 23(b)(3) requirements of predominance and superiority. This Court examines each of these requirements.

### 1. Commonality/Predominance

As set forth above, Rule 23(a) requires that there be common questions of law and fact, and Rule 23(b)(3) requires that questions of law or fact common to the members of the class predominate over any questions affecting only individual members. Because the parties address these requirements together, this Court will do so also. This Court agrees that the predominance requirement incorporates the commonality requirement.

Plaintiffs contend that the following facts are common to the class: Defendant has solicited and induced bankruptcy debtors to pay pre-petition debt during bankruptcy and/or after discharge; Defendant did not obtain a non-dischargeability order from the Court or a reaffirmation agreement subject to 11 U.S.C. § 524(c); Defendant did not comply with the provisions of the Bankruptcy Code when it collected monies without such agreements, and when it otherwise enforced or attempted to enforce the personal liability of debtors with respect to pre-petition debt. Plaintiffs contend that as a result of these acts, Defendant is alleged to have violated: Section 362 of the Bankruptcy Code and Section 524 of the Bankruptcy Code. Plaintiffs further contend that four other common issues are: (1) whether Plaintiffs and class members are entitled to an order declaring Defendant's practices as described above to be unlawful; (2) the appropriate amount

of damages and other relief to be granted to Plaintiffs and class members; (3) protection of Plaintiffs and the class members from any foreclosure and/or repossession activities of Defendant until the resolution of the claims contained herein; (4) whether Defendant should be found in contempt of court for violation of the statutorily mandated permanent injunction crated by the Bankruptcy Court's discharge order and the appropriate relief to be granted to Plaintiffs and Class Members as a result of the contempt. With respect to the predominance factor, Plaintiffs contend that questions about the lawfulness of collecting discharged debt without the benefit of court approval, relief from stay or reaffirmation agreement are the heart of the claims raised here.

In opposition, Defendant argues: (a) that the "ride-through" option available under Section 521(2)(A) produces non-common issues on a nationwide basis; (b) that the "ride-through" option produces non-common issues on a Ninth Circuit basis; and (c) non-common questions include whether a particular communication with a debtor involved an improper solicitation and whether each payment by a debtor was voluntarily made in order to prevent foreclosure of their home.

### a. The "ride-through" option prevents commonality and predominance on a nationwide basis

Defendant argues that the "ride-through" option available to debtors in Chapter 7 bankruptcies precludes class certification.

Bankruptcy Code Section 521(2)(A) provides that after filing a Chapter 7 petition, a debtor who has consumer debts secured by property of the estate shall file a statement of intention to retain or surrender the property and, if applicable, specify that the debtor claims the property as exempt,

plans to redeem the property, or intends to reaffirm the debt. However, beyond these statutory options, courts have recognized another alternative available to a Chapter 7 debtor. In *McClellan Federal Credit Union v. Parker* (In re Parker), 139 F.3d 668 (9th Cir.1998), the Ninth Circuit joined the Second, Fourth and Tenth Circuits in holding that Section § 521(2)(A) did not preclude an alternative fourth option, also known as the "ride-through." Under this option, debtors who are current on their loan payments on secured property may elect to retain the property and make the payments specified in the contract with the creditor without reaffirming the obligation. *See id.* at 672. This is what Plaintiffs elected to do. By contrast, in the First, Fifth, Seventh and Eleventh Circuits, once the debtor decides to retain the property rather than surrendering it, he must redeem the property or reaffirm the debt. *See id.* Thus, if Plaintiffs lived in one of these Circuits, and if they had not formally reaffirmed the debt, Defendant could have obtained relief from the automatic stay and foreclosed.

A reason behind the "ride-through" option is to provide debtor protection:

Confining an individual Chapter 7 debtor to the choices of surrender, redemption or reaffirmation can severely interfere with providing the debtor a fresh start. [A] debtor is unlikely to be able to redeem the collateral in a lump sum .... Thus, if the options were exclusive, a debtor's only real choices would be either to reaffirm the debt under whatever new terms the creditor requires or to surrender the property. Because reaffirmation involves negotiation between parties with unequal bargaining power and requires voluntary agreement by both debtor and creditor, it gives a creditor an effective veto on the 'fresh

start.' Yet, surrender may deprive a debtor of much needed property[.]

*Capital Communications Fed. Credit Union v. Boodrow*, 126 F.3d 43, 51 (2d Cir. 1997). Balancing the debtor's interest is that the creditor's security interest in collateral and the secured obligation remain unchanged by bankruptcy and discharge. The creditor may foreclose if the debtor defaults in repaying the secured obligation. Prior to foreclosure, however, courts under this "ride-through" option have allowed the creditor to take other acts, short of foreclosure, to enforce its rights against the collateral.

This Court agrees with Defendant that the inter-circuit split over the "ride-through" option precludes nationwide certification. In assessing the propriety of class certification, "a district court must consider how variations in law affect predominance and superiority." *Castano v. American Tobacco Co.*, 84 F.3d 734, 741 (5th Cir.1996). That is because "in a multi-state class action, variations in state law may swamp any common issues and defeat predominance." *Id.* (citations omitted). This Court acknowledges that this principle has arisen in nationwide class actions asserting state-law claims. However, it applies equally here where the inter-circuit split on the allowance of the "ride-through" option will "swamp" any common issues and defeat predominance.

Plaintiffs argue that the "ride-through" split is immaterial to class certification. Specifically, they argue that this Court should apply the law of the Circuit in which it sits to nationwide class certification. In support of their argument, they point to the joinder of multiple individual lawsuits by the Judicial Panel on Multi-District Litigation pursuant to 28 U.S.C. § 1407. They contend that in many MDL cases, substantive issues in the litigation arise under federal law, and the issue be-

comes which law applies—the law of the transferee court or of the transferor court. Under these circumstances, the law of the circuit of the transferee court applies rather than the law of the various circuit in which they were first filed. *See Campos v. Ticketmaster Corp.*, 140 F.3d 1166, 1171 (8th Cir.1998.) Plaintiffs assert that by analogy, this Court should apply the law of the Circuit where it sits.

This Court finds Plaintiffs' argument unpersuasive. Multi-district litigation cannot fairly be compared to class action litigation for the purpose contended here by Plaintiffs. In multi-district litigation, the determination of whether cases should be consolidated for coordinated or consolidated *pretrial* proceedings is based upon "one or more common questions of fact" and upon a determination that "transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." *See* 28 U.S.C. § 1407. By contrast, in class certification actions, the determination of whether members of a class can bring an action involves whether the common questions of law or fact predominate over individual questions involving individual members. This inquiry requires this Court to take into account the variation in the law which applied to the potential class member debtors in their bankruptcy proceedings.

The split in the circuits regarding the "ride-through" option means that citizens residing in different states operate under differing rules of law. One case, pending in a non-ride through circuit, will sit in a different procedural posture than another case, pending in a non-"ride-through" circuit. Bankruptcy courts in "ride-through" jurisdictions will have handled the cases differently than bankruptcy courts in non-"ride-through" jurisdictions. Different types of injunctions will have issued in

"ride-through" jurisdictions as compared to non-"ride-through" jurisdictions. This Court notes that another district court case has made the same determination upon a motion for class certification. In *Walls v. Wells Fargo Bank*, 262 B.R. 519, 527 (Bankr.E.D.Cal.2001), the Court based the denial of class certification, in part, on the split among the Circuits: "These requirements [predominance and superiority] create significant problems for Plaintiff. The existence of the 'ride-through' option in some circuits means that the questions of law are different among the members of the class." Thus, this Court finds that the inter-circuit split regarding the "drive-through" option defeats commonality and predominance.

### b. The "ride-through" option prevents commonality and predominance on a Ninth Circuit basis

Defendant further argues that the intra-Ninth Circuit split preludes any class certification. This Court agrees. Limiting certification to borrowers who reside in "ride-through" Circuits would not solve the problem. So far, none of the "ride-through" Circuits has clarified the details of the debtor's and creditor's respective rights and duties in the context of a "ride-through" election. As a result, bankruptcy and district courts have developed varying rules on what creditors may and may not do, or more specifically, what types of communications are proper in the "ride-through" context. For instance, in this case, Judge Bufford acknowledged that a creditor may properly initiate certain contacts with the debtor, such as sending monthly statements and payment coupons, giving notice of default in making postpetition payments and to arrange for the payment or refinancing of arrearages. *See Henry v. Associates Home Equity Services, Inc.*, 266 B.R. 457, 472 (Bankr.

C.D.Cal.2001). However, Judge Bufford then determined that "[p]roper communications in this [ride-through] context initiated by a creditor are limited to written communications." *See id.* at 473. He reasoned that this approach relieves the bankruptcy court from having to separately determine the content of each call. *See id.* ("One benefit of a written communication is that it creates a record which permits the evaluation of whether the communication was proper, and did not stray into improper collections activities.") By contrast, Defendant points to other courts which have issued orders in individual cases which allow, and in some cases, direct creditors in "ride-through" cases to accept the debtors' payments, send coupon books, and notify debtors by mail or *telephone* of any default—without violating the automatic stay or discharge injunction. Bankruptcy Judge McManus of the Eastern District has developed a self-termed "comfort" order for creditors in "ride-through" cases. The order clarifies that accepting payments, sending monthly statements and coupon books, and contacting debtors about their defaults does not violate the automatic stay or discharge injunction. A typical order reads:

> In the event the debtor defaults . . . [the creditor] may collect its debt only by enforcing its rights against the collateral. Such collection may include written, electronic, and/or telephonic communication to the debtor to notify the debtor of any default and the creditor's intention to foreclose its collateral unless the debt is cured.

*In re Smith*, United States Bankruptcy Court, Eastern District of California, No. 99–94172–A–7, October 4, 2000 Order at pp. 2–3; Defendant's RJN, Exh. D. Similarly, Judge McKeag of the Eastern District has issued an order tracking Judge McManus' comfort order. *See In re Wat-*

son, United States Bankruptcy Court, Eastern District of California, No. 00–30882–B–7, December 18, 2000 Order at p. 2; Defendant's RJN, Exh. E. Also, a judge in the Northern District has issued a similar order. *See In re Moffett*, United States Bankruptcy Court, Northern District of California, No. 00–45345–TK, December 28, 2000 Order at p. 2; RJN Exh. G. These orders basically hold that creditors have the right to contact defaulting "ride-through" debtors, including by telephone, so long as they do not threaten personal liability.

Plaintiffs contend that these orders cannot shield Defendant from liability to the Class. Specifically, they argue that these comfort orders have been procured primarily by Defendant's counsel in this case, that the orders are consensual, and that the orders cannot shield Defendant from conduct that violates the Bankruptcy Code. This Court finds these arguments to be insignificant. First, that the orders have been procured primarily by Defendant's counsel or that the orders are consensual do not mean that the orders are any less valid determinations by these courts, which were made after deliberation and examination of the issues. Second, these orders do not purport to allow conduct which is expressly prohibited by the Bankruptcy Code. The significance of these orders is to show that courts within this Circuit have developed differing rules for post-discharge contacts by the creditors under the "ride-through" option. To attempt to adjudicate these claims on a class basis would require a review of each bankruptcy to determine whether such orders have been issued. As another district court noted when faced with this identical issue on a motion for class certification:

> What constitutes acceptable communication between a secured creditor and a debtor taking advantage of the 'ride-through' option varies on a case-by-case

basis and even from court to court. [Footnote.] For example, the conduct complained of by Plaintiffs, ..., is ordered by some bankruptcy judges. Plaintiffs seek to disallow the same conduct that many similarly situated debtors welcome and some courts order.

*Kibler v. WFS Financial, Inc.*, 2001 WL 388764, * 5 (Bankr.E.D.Cal.2001). Thus, this Court finds that the varying treatment defeats the factors of commonality and predominance for a Ninth Circuit class.

### c. The nature of the solicitation activity and whether it was violative of the discharge injunction are non-common questions

Defendant asserts that the exact nature of the solicitation activity is a non-common question that will have to be determined on a case-by-case basis. This Court agrees. Plaintiffs seek to certify a class of debtors from whom Defendant "solicited" payments post-petition. However, "[w]hat constitutes acceptable communication between a secured creditor and a debtor taking advantage of the 'ride-through' option varies on a case-by-case basis ...." *See Kibler*, 2001 WL 388764, at *4; *see also Metcalf v. Household Intern. Inc.*, 2001 WL 1608012, at *3 ("While many Beneficial debtors may have received a post-discharge telephone call from Beneficial, this fact alone is essentially irrelevant because it establishes no issue in dispute and does not state a claim. Rather, it will be the particular content of the telephone calls and the frequency of those calls on which liability may be based and on which the litigation will focus.").

In addition, as Defendant asserts, whether the particular "solicitation" activity violates the discharge injunction is a non-common question that would have to be analyzed on a contact-by-contact basis. In the Ninth Circuit, "mere requests for

payment are not barred absent coercion or harassment by the creditor." *Morgan Guar. Trust Co. v. American Sav. & Loan Assn.,* 804 F.2d 1487, 1491 (9th Cir.1986). As such, once the particular "solicitation" has been identified for each debtor, the question becomes whether that activity involved "coercion or harassment," and such question cannot be decided by common proof but rather by fact-specific inquiries made on an individual basis.

### d. The question of damages is not common to all members of the class

The primary remedies sought by Plaintiffs are damages under 11 U.S.C. 362(h) and contempt for violation of the discharge injunction. Section 362(h) requires a willful violation of the automatic stay in order for an individual to recover damages. Thus, the damages inquiry is necessarily fact specific to the particular bankruptcy case. While Judge Bufford found willfulness on the part of Defendant with respect to its contact of the Henry's, other courts vary as to what constitutes permissible post-discharge contacts, precluding a common finding of willfulness. In addition, "the extent of damages under 362(h) will depend not just on the class-wide behavior of Defendant (assuming for the sake of argument that there is 'class wide' behavior) but on the extent of damages to each individual debtor. Similarly, any sanctions under the court's power to issue contempt orders must be predicated on the extent of the injury to the debtor in question." *Walls,* 262 B.R. at 529.

### 2. Typicality/adequacy of representation

■ "The adequacy-of-representation requirement 'tends to merge' with the ... typicality criteria of Rule 23(a), which 'serve as guideposts for determining

whether ... maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 626, n. 20, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (quoting *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 157, n. 13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)).

Plaintiffs contend that their claims arise from the same practice or course of conduct giving rise to claims of other potential class members: Defendant wrongfully communicated with Plaintiff about payment of discharged debt; this communication declared that a balance was due on a discharged debt; .Plaintiff then paid a portion of this discharged debt. In opposition, Defendant contends that Plaintiffs' claims are not typical of those of the purported class.

This Court finds that Plaintiffs have failed to meet the typicality and adequacy of representation requirements. Plaintiffs seek to represent all debtors to whom Defendant directed any "solicitation" activity. Plaintiffs reside in a "ride-through" Circuit and were able to take advantage of this option. However, their claims differ from those of debtors who do not reside in "ride-through" Circuits, as well as from those of debtors who do but did not elect this "ride-through" option. As another district court stated in finding that plaintiff's claims are not typical of those of many of the class members:

The propriety of Defendant's collection practices will depend ... on which group of debtor class members is affected. For instance, solicitation of payment from those debtors who elected to surrender Defendant's collateral would seem an obvious violation of the ... discharge injunction. On the other

hand, Debtors who exercised their right to redeem the collateral for its fair market value have not been injured by not executing a reaffirmation agreement. Plaintiffs do not belong to and have little in common with either group. Rather, Plaintiffs are among those individuals who did not formalize their election under section 521(2)(A), opting to retain Defendant's collateral without actually reaffirming the debt.

*Kibler*, 2001 WL 388764, at *4. Plaintiffs attempt to meet this requirement by asserting that the action really challenges Defendant's policy of calling delinquent secured debtors to ascertain their intentions with regard to secured property. However, as Plaintiffs acknowledge, Defendant's practice cannot be separated from its policy, and whether these practices are allowed vary depending on whether the debtor lives in a "ride-through" circuit, and in some cases, depending on the court within the "ride-through" circuit. Further, the contact resulting from the policy by itself is insufficient; each contact must be examined to determine whether it rises to the level of harassment or coercion.

Furthermore, Plaintiffs limit the class "to those who suffered collection activity beyond receipt of monthly statements." They claim that the violations "include primarily telephone collection calls, seeking payment on secured debt." This Court agrees with Defendant that this position may conflict with, and even be opposed to, the interests of other class members. As explained above, what constitutes acceptable communication between a secured creditor and a debtor taking advantage of the "ride-through" option varies on a case-by-case basis. Conduct that may be unacceptable in one case may be ordered in other cases. In addition, "[i]f Plaintiffs' position were to be upheld, the 'ride-through' option would no longer be viable. Yet many debtors consider the ability to

retain property subject to a security interest, without exposure to personal liability, a benefit." *Kibler*, 2001 WL 388764, *5. Because the "ride-through" was created as a debtor protection measure—to allow debtors to keep their property, avoid personal liability which a reaffirmation agreement would require, and avoid repossession by staying current on their payments, creditors have been allowed to facilitate debtors' payments by informing them when they have defaulted. Thus, Plaintiffs are challenging a procedure that many class members may view as a benefit to debtors.

### 3. Superiority

Plaintiffs contend that a class action is the superior means of resolving this dispute because it provides debtors with a realistic means to redress Defendant's wrongdoing. It claims that the interests of class members in individually controlling the prosecution of separate actions against Defendant is nonexistent because most or all of the class members have a damage claim which would not warrant individual action.

As set forth above, the superiority determination takes into account the following factors: the interest of members of the class in individually controlling the prosecution or defense of separate actions; the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and the difficulties likely to be encountered in the management of a class action. This Court finds that the first, third and fourth factors weigh against certification.

Members of the class have an interest in controlling their own actions because they

wish to receive ongoing communications from Defendant, especially if they have fallen behind in their payments. Plaintiffs argue that the paucity of such claims brought against Defendant on the issues raised here evidence that individual class members have no interest in controlling their own litigation. However, this "paucity" of claims can also evidence that these members do not wish to pursue any of the claims asserted here because of their interest in receiving communications from the creditor regarding their payments. In addition, as evidenced by Plaintiffs' case, the Bankruptcy Code provides a powerful remedy through contempt, with the potential of compensatory and punitive damages.

It would also be undesirable to concentrate the litigation of these claims in this forum because bankruptcy courts have developed varying rules on how "ride-throughs" should be handled. Contrary to Plaintiffs' assertions, it is more appropriate for each of those bankruptcy courts, rather than this Court, to determine whether its own "ride-through" debtors should be allowed to continue their automated payments and complete the "ride-through" procedure.

Finally, management of the proposed class action will likely prove to be difficult. This Court would have to determine for each debtor what rules the particular bankruptcy court developed for handling "ride-throughs" and evaluate on a case-by-case basis whether the particular "solicitation" activity each "ride-through" debtor experienced violated those rules. Plaintiffs try to simplify the action by pointing to the fact that the liability and damages issues for Plaintiffs already have been managed by the Bankruptcy Court, but the liability and damages issues were limited to only those Plaintiffs in that particular court.

In sum, based on the foregoing factors, this Court finds that the proposed class action fails to be superior to other available methods for the adjudication of the issues presented.

### 4. Certification is not warranted under Rule 23(b)(2)

██ This Court briefly addresses Plaintiffs' argument that class certification is also proper pursuant to Rule 23(b)(2), which provides that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Plaintiffs contend that the requirements of Rule 23(b)(2) are also satisfied because Plaintiffs' complaint prays for declaratory and injunctive relief. However, in their Complaint, Plaintiffs seek certification only under Rule 23(b)(3), as analyzed above. Perhaps recognizing the difficulties, Plaintiffs assert this alternate basis in their current motion. Nonetheless, the courts have been clear that Rule 23(b)(2) certification is only appropriate for class actions that seek primarily injunctive or declaratory relief and does not apply to class actions that seek predominately monetary relief. *See Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 411 (5th Cir.1998). While monetary relief may be obtained in a Rule 23(b)(2) class, the predominant relief sought must be injunctive or declaratory. *See id.* Here, there can be no doubt that money damages, not injunctive or declaratory relief, is the predominant form of relief sought. As evidenced by their Complaint, Plaintiffs' request for declaratory and injunctive relief is only incidental to their main request for monetary damages. As such, certification under Rule 23(b)(2) is not appropriate in this proceeding.

## III. Conclusion

Plaintiffs have not met their burden of showing that all of Rule 23's requirements have been satisfied. In any of the requirements are not met, certification must be denied. Here, the requirements of commonality, typicality and adequacy of representation of Rule 23(a) and predominance and superiority of Rule 23(b)(3) have not been met. Accordingly, this Court denies Plaintiffs Michael J.B. Henry and Vicki A. Henry's Motion for Class Certification.

IT IS SO ORDERED.