**CHASE MANHATTAN MORTGAGE CORPORATION, Appellant,**

v.

**Lovell PADGETT and Marie Ann Padgett, Appellees.**

No. 01–0012–CIV.

United States District Court, S.D. Florida.

Sept. 25, 2001.

Patricia A. Redmond, Stearns, Weaver, Miller, Weissler, Alhadeff & Sitterson, P.A., Miami, FL, Stuart H. Gitlitz, Mitchell Jordan Nowack, Faber & Gitlitz, P.A., Coral Gables, FL, for appellant.

Gail M. Ruiz, Miami, FL, for appellees.

*ORDER AFFIRMING BANKRUPTCY COURT'S ORDER*

SEITZ, District Judge.

Chase Manhattan Mortgage Corporation ("Chase" or "mortgagee") appeals the United States Bankruptcy Court's September 22, 2000 Order Extending Deadline for Compliance With Notice of Delinquency, Reinstating Debtor's Home Mortgage Upon Payment to Chapter 13 Trustee, Denying Debtor's Motion for Hardship Discharge, and Granting Chase Manhattan Mortgage Stay Relief Only as to Defaults in Payments Due After September 1, 2000 [DE–6]. In its Order, the Bankruptcy Court concluded that Chase waived its right to recover post-confirmation advances because it failed to notify Lovell and Marie Ann Padgett ("Padgetts" or "mortgagors") of the need to increase their monthly mortgage payments to cover increases in property taxes and insurance premiums.[1] Chase maintains that because it possesses a security interest in the Padgetts' homestead, the Bankruptcy Court impermissibly modified its contractual right to recover the advances in violation of 11 U.S.C. § 1322(b)(2). This statute provides that a Chapter 13 Plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence...." Because Chase failed to comply with the relevant notice requirements under federal and state law, the Court finds that Chase waived its right to recover the advances. Consequently, the Court AFFIRMS the Bankruptcy Court's Order.

## I

### Factual and Procedural Background

Chase holds a mortgage encumbering the Padgetts' homestead.[2] The original mortgage and note dated August 7, 1987 define both parties' rights, duties and obligations. In particular, paragraph 2 of the mortgage provides that if "the monthly payments made by the mortgagor...[are not] sufficient to pay ground rents, taxes and assessments and insurance premiums...then the mortgagor shall pay to the mortgagee any amount necessary to make up the deficiency, on or before the date when payment [is due]." Paragraph 4 further provides that "[the mortgagor] will pay all taxes, assessments, water rates, and other governmental or municipal charges, fines, or impositions for which provision has not been made hereinbefore, and in default thereof the mortgagee may pay the same...."

Having fallen behind in their monthly mortgage payments, the Padgetts filed a Chapter 13 petition on January 7, 1994, to cure arrearages in their monthly mortgage payments and to save their homestead from foreclosure. On February 16, 1994, the Padgetts filed their Chapter 13 Plan

---

**1.** The Bankruptcy Court's two-page September 22, 2000 Order does not explicitly state the grounds for deeming the Padgett's mortgage loan current and reinstated through August, 2000 upon the Chapter 13 Trustee's disbursement of $774.77 to Chase, not including the advances on the increased property taxes and insurance premiums prior to October 1998. However, at a hearing on August 16, 2000, the Bankruptcy Court noted that the mortgagee cannot go back and retroactively increase the plan payments or escrow amounts, and that the principle of res judica-

ta applies to the amounts owed unless the debtor is put on notice of the additional amounts owed. (*See* Aug. 16, 2000 Tr.).

**2.** Chase is actually the successor-mortgagee-in-interest under the original mortgage and note dated August 7, 1987, between Federated Mortgage Associates, Inc. and the Padgetts. However, for purposes of this appeal, the Court shall refer to Chase as the sole mortgagee.

with the Bankruptcy Court. Pursuant to the Plan, the Padgetts were to pay $11,131.69 in mortgage arrearages over a period of forty-eight months, and $517.00 in regular monthly payments over the same period.

The Padgetts amended their Plan three times prior to confirmation by the Bankruptcy Court. On November 18, 1994, the Padgetts filed their Third Amended Plan with the Bankruptcy Court. The Third Amended Plan provided that the Padgetts would cure their arrearages to Chase by paying $237.14 per month while, at the same time, remaining current on the post-petition obligations under the mortgage and note in the amount of $478.72 per month. On December 29, 1994, the Bankruptcy Court confirmed the Amended Plan.

Beginning in 1996, the yearly property tax and insurance premiums on the Padgetts' homestead increased by the aggregate amount of $960 per year, or $80 per month. At the time of this increase, the Padgetts did not provide sufficient monthly payments to the escrow account to cover the increase in property taxes and insurance premiums. Nonetheless, Chase elected to advance these sums for the Padgetts' account as the payments became due. According to Chase, because it feared violating the automatic stay imposed by 11 U.S.C. § 362(a), Chase did not provide the Padgetts with separate notice of the escrow deficiencies and advances in light of the increased property taxes and insurance premiums.

In October of 1996, Chase moved to dismiss the Padgetts' Third Amended Plan as a result of their failure to maintain their monthly payments. In November of 1996, the Padgetts responded by filing a motion to modify the Third Amended Plan. The Bankruptcy Court approved the Fourth Amended Plan on July 23, 1997 *nunc pro*

*tunc* to December 18, 1996, which provided for regular monthly mortgage payments of $478.72. Chase did not dispute the arrearage figures set forth in the Fourth Amended Plan, and did not notify the Padgetts of any escrow deficiencies, advances, or the need to increase their regular monthly payments to cover the increases in property taxes and insurance premiums.

On October 7, 1998, the Bankruptcy Court heard oral argument on the Padgetts' motion to modify their Fourth Amended Plan. During the hearing, Chase finally notified the Padgetts that the regular monthly post-petition mortgage payment increased to $561.94, and that they may owe funds to Chase beyond those provided for in the Chapter 13 Plan because of an increase in property taxes and insurance premiums. Prior to this hearing, Chase had not notified the Padgetts of the tax and insurance increases, even though the parties had been in contact with each other regarding the numerous motions to modify the Padgetts' Chapter 13 Plan.

Chase continued to pay the property tax and insurance advances until November 4, 1998, when the Padgetts filed a modification to the Fourth Amended Plan that provided a prospective increase from $478.21 to $561.94 in monthly payments to cover the tax and insurance increases. On November 16, 1998, the Bankruptcy Court confirmed the Fourth Amended Plan, and the Padgetts' increases in monthly payments obviated the need for Chase to add to the advances in the future. However, due to Chase's failure to notify the Padgetts, the Bankruptcy Court's Order did not grant Chase the right to recover past advances.

In early 1999, there was a change in trustees. The Padgetts, believing that they had completed their payments to the Chapter 13 trustee under the Amended

Plan, tendered their first regular post-plan monthly mortgage payment directly to Chase in February, 1999. On June 30, 2000, the successor Chapter 13 trustee filed a notice of delinquency advising the Padgetts that they owed $992.24. In addition, the successor trustee sought an automatic dismissal of the bankruptcy case if the Padgetts failed to cure the delinquency within forty-five days. On July 13, 2000, Chase filed a motion seeking relief from the automatic stay. The Padgetts opposed both motions and moved the Bankruptcy Court to extend the trustee's deadline for curing the delinquency and to order reinstatement of the Padgetts' home mortgage upon cure of any deficiency in the Chapter 13 plan payments. The Bankruptcy Court held a hearing on these matters on August 16, 2000.

On September 22, 2000, the Bankruptcy Court entered an Order, extending the deadline for curing the deficiency in the Chapter 13 payments through September 2000, and reinstating the mortgage through August 2000 upon the Chapter 13 trustee's disbursement of funds owed to Chase. The Order further granted relief from the stay to Chase, but only for any nonpayment occurring after September 1, 2000. The Bankruptcy Court's Order specifically provided that:

> [U]pon the Chapter 13 trustee's disbursement to CHASE MANHATTAN MORTGAGE CORPORATION of $774.77, the [Padgetts'] mortgage loan with CHASE MANHATTAN MORTGAGE shall be deemed current and reinstated through the month of August, 2000...

On January 29, 2001, Chase filed this appeal, contending that the Bankruptcy Court erred, as a matter of law, in holding that Chase waived its right to recover the advances pursuant to the mortgage and note by failing to notify the Padgetts of the tax and insurance increases and the need to increase their payments to cover the escrow deficiencies.

## II

### Discussion

#### A. Standard of Review

■ In bankruptcy cases, the district court serves as an appellate court of review. *See In re Calvert,* 907 F.2d 1069, 1071 (11th Cir.1990). The district court may set aside the bankruptcy court's factual findings only if such findings are clearly erroneous. *See id.* However, the bankruptcy court's conclusions of law are subject to *de novo* review by the district court. *See id.* (citing *In re Sublett,* 895 F.2d 1381 (11th Cir.1990); *In re Thomas,* 883 F.2d 991, 994 (11th Cir.1989)). Because Chase concedes in its Reply Brief that there are no significant factual disputes relevant to this appeal, the Court here applies the *de novo* standard of review in considering whether the Bankruptcy Court's Order violated section 1322(b)(2) as a matter of law.

#### B. Chase's Rights as Mortgagee Under Section 1322(b)(2)

The general rule under section 1322(b)(2) is that a bankruptcy court is prohibited from confirming a Chapter 13 plan that modifies a mortgagee's property rights in the mortgagor's homestead. *See Nobelman v. American Savings Bank,* 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). Chase contends that the Bankruptcy Court's September 22, 2000 Order violated section 1322(b)(2) by waiving its right to repayment of the advances Chase made prior to notifying the Padgetts of the escrow deficiencies. Chase further contends that no provisions in the confirmed Plan, subsequent modifications, or the original mortgage and note require notice of advances and escrow deficiencies.

Therefore, Chase concludes that it is entitled to repayment of the advances, notwithstanding the fact that it admits to not notifying the Padgetts of the escrow deficiencies until October of 1998.

In order to determine Chase's "rights" under the mortgage and note for the purposes of determining whether the Bankruptcy Court impermissibly modified its rights in violation of section 1322(b)(2), it is necessary to determine Chase's duties under the mortgage and note. As a "federally related mortgage loan," the Padgett's mortgage is subject to the notice requirements of the federal Real Estate Settlement Procedures Act ("RESPA").[3] 12 U.S.C. § 2609(b).

■ RESPA provides that if a federally related mortgage loan requires the mortgagor to make payments to the mortgagee for deposit into an escrow account for the payment of taxes and insurance premiums,

"…the servicer shall notify the borrower not less than annually of any shortage of funds in the escrow account."[4] 12 U.S.C. § 2609(b). Because the terms of the mortgage in question require the Padgetts to make payments to Chase for deposit in an escrow account to cover property taxes and insurance premiums, section 2609(b) requires Chase to notify the Padgetts of any escrow deficiencies.[5] Thus, although Chase was permitted to make advances without prior notice, Chase nevertheless was obligated to notify the Padgetts of the escrow deficiencies resulting from the tax and insurance increases. Consequently, the Bankruptcy Court did not err, as a matter of law, in finding that Chase waived its right to recover the advances for failing to notify the Padgetts of the escrow deficiencies.

In addition to the notice requirement under RESPA, section 501.137 of the Florida Statutes requires Chase to notify the

**3.** 12 U.S.C. § 2602(1)(B)(i) provides that a loan is a "federally related mortgage loan" if the loan "is made in whole or in part by any lender the deposits or accounts of which are insured by any agency of the Federal Government, or is made in whole or in part by any lender which is regulated by any agency of the Federal Government…."

12 U.S.C. § 2602(1)(B)(iv) further provides that a loan is a "federally related mortgage loan," if the loan is made "in whole or in part by any 'creditor', as defined in section 1602(f) of Title 15, who makes or invests in residential real estate loans aggregating more than $1,000,000 per year…." Section 1602(f) of Title 15 provides in relevant part, *inter alia*, the following:

The term "creditor" refers only to a person [or organization] who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if

there is no such evidence of indebtedness, by agreement. 15 U.S.C. § 1602.

Here, Chase does not dispute that the mortgage at issue is insured by the United States Department of Housing and Urban Development under the National Housing Act, 12 U.S.C. §§ 1701, 1709, or that Chase is a lender that makes or invests in residential real estate loans aggregating more than $1,000,000 per year. Thus, the Court finds that the loan in question is a "federally related mortgage loan."

**4.** 12 U.S.C. § 2605(i)(2) defines "servicer" as "the person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan)." 12 U.S.C. § 2605(i)(3) defines "servicing" as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts…."

**5.** Although Chase is not required to submit annual account statements to the Padgetts who have filed for bankruptcy, *see* 24 C.F.R. § 3500.17(i)(2), Chase is required to notify the Padgetts of any shortage of funds in the escrow account. *See* 24 C.F.R. § 3500 .17(f)(5).

Padgetts of any escrow deficiencies.[6] *See* Fla. Stat. § 501.137. Section 501.137 of the Florida Statutes provides, in relevant part:

> If an escrow account for such taxes or insurance premiums is deficient, the lender shall notify the property owner within 15 days after the lender receives the notification of taxes due from the county tax collector or receives the notification from the insurer that a premium is due....At the expiration of the annual accounting period, the lender shall issue to the property owner an annual statement of the escrow account. Fla. Stat. § 501.137.

Thus, pursuant to section 501.137, Chase was required to provide the Padgetts with prompt notice of any escrow deficiencies and an annual statement of the escrow account.[7]

■ Although section 1322(b)(2) generally prohibits a bankruptcy court from modifying a mortgagee's right to repayment of advances under a mortgage and note, section 1322(b)(2) does not prevent a bankruptcy court from modifying the mortgagee's rights where the mortgagee has failed to comply with its duty to notify the mortgagor of escrow deficiencies under federal and state law. Consequently, the Court finds that because Chase failed to comply with the notice requirements under RESPA and section 501.137 of the Florida Statutes, the Bankruptcy Court did not err as a matter of law in concluding that Chase waived its right to recover the advances.

### C. Mere Notice of Escrow Deficiencies Does Not Violate the Automatic Stay Imposed by 11 U.S.C. § 362(a)

■ In addition to its section 1322(b)(2) challenge, Chase contends that the Bankruptcy Court's Order violates public policy because it places Chase in the untenable position of either (1) violating the automatic stay imposed by 11 U.S.C. § 362(a) by notifying the Padgetts of the escrow deficiencies and demanding payment for the advances, or (2) complying with the automatic stay imposed by 11 U.S.C. § 362(a), and thereby waiving the right of repayment on the advances.[8] However, section 362(a) does not prohibit mere notice to a mortgagor in bankruptcy of an advance or escrow deficiency. *See* 11 U.S.C. § 362(a); *In re Draper,* 237 B.R. 502, 505–06 (Bankr. M.D.Fla.1999).

As the bankruptcy court in *Draper* noted, the automatic stay was "designed to stop all harassment and collection efforts by creditors, relieving the debtor of the very pressures which drove [the debtor] into bankruptcy." *Draper,* 237 B.R. at 505 (citing *In re Smith,* 185 B.R. 871, 873 (Bankr.M.D.Fla.1994)). Thus, while section 362(a) prohibits a mortgagee from exerting pressure on a mortgagor to repay advances, it does not prohibit a mortgagee from merely providing necessary information or notice to a mortgagor of escrow deficiencies. *See Draper,* 237 B.R. at 505–06. Here, although Chase was prohibited from demanding payment from the Pad-

---

**6.** Although federal law generally preempts inconsistent state law, RESPA provides the following:

> This chapter does not annul, alter, or affect, or exempt any person subject to the provisions of this chapter from complying with, the laws of any State with respect to settlement practices, except to the extent that those laws are inconsistent with any provision of this chapter, and then only to the extent of the inconsistency....

12 U.S.C. § 2616.

**7.** The Court notes that in its briefs on appeal, Chase does not dispute the application of RESPA or section 501.137 to the Padgetts' mortgage.

**8.** In making this argument, Chase implicitly concedes that its failure to provide notice of escrow deficiencies should result in a waiver of its right to demand repayment of the advances.

getts, Chase would not have violated the automatic stay by merely providing the Padgetts with notice of the advances and escrow deficiencies. Consequently, the Bankruptcy Court's Order did not violate public policy by waiving Chase's right to repayment of the advances for failing to notify the Padgetts of the escrow deficiencies.

### Conclusion

Based upon the foregoing reasons, it is hereby

ORDERED that the Bankruptcy Court's Order of September 22, 2000 is AFFIRMED.