**In re Alex ZOTOW and Theresa Zotow, Debtors.**

**Alex Zotow; Theresa Zotow, Appellants,**

**v.**

**Jan P. Johnson; Bac Home Loans Servicing, LP, formerly known as Countrywide Home Loans Servicing, LP, Appellees.**

**BAP No. EC–09–1409–JuPaKw. Bankruptcy No. 09–20504.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on May 18, 2010.

Filed June 18, 2010.

Mark A. Wolff, Elk Grove, CA, for Alex Zotow, Jr., Theresa Zotow.

Jan P. Johnson, Sacramento, CA, for Trustee.

Brian C. Walsh, Bryan Cave LLP, St. Louis, MO, Katherine M. Windler, Sheri Kanesaka, Bryan Cave LLP, Santa Monica, CA, for BAC Home Loans Servicing, LP.

Before: JURY, KWAN[1], and PAPPAS, Bankruptcy Judges.

## OPINION

JURY, Bankruptcy Judge.

Alex and Theresa Zotow ("Debtors") appeal the bankruptcy court's order which determined that BAC Home Loans Servicing, LP ("BAC"), f/k/a Countrywide Home Loans Servicing, LP, did not violate the automatic stay.

The matter arose in connection with Debtors' objection to BAC's proof of claim. Debtors objected on the ground that their prepetition escrow arrearages on their mortgage should have been included in BAC's proof of claim. Instead, postpetition, BAC provided notice to Debtors showing an increase to their postpetition mortgage payments which, Debtors argued, improperly included their prepetition escrow arrears in violation of § 362(a)(6).[2] Debtors further alleged that BAC received several increased postpetition mortgage payments from the Chapter 13 trustee and applied those payments to their prepetition debt, also in violation of the stay.

On appeal, Debtors assert that the bankruptcy court erred, as a matter of law, by concluding that BAC's acts did not violate the automatic stay. We disagree with Debtors and, for the reasons set forth below, we AFFIRM.

## I. FACTS

On January 13, 2009, Debtors filed their Chapter 13 bankruptcy petition. Jan P.

---

1. Hon. Robert N. Kwan, Bankruptcy Judge for the Central District of California, sitting by designation.

2. Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

Johnson was appointed to serve as Chapter 13 trustee.[3]

Debtors' home, listed with a value of $120,000 in their Schedule A, was encumbered by two mortgages serviced by BAC, each based on separate notes and deeds of trust. This appeal relates only to the first position note and deed of trust.[4]

The terms of Debtors' mortgage required them to make monthly payments of principal, interest and escrow items. BAC held the escrow items, which included taxes and homeowners' insurance, in an escrow account until those items became due, at which point BAC distributed the funds. In the year preceding their Chapter 13 filing, BAC charged Debtors $186.38 a month for escrow items, bringing their total monthly payment under the note to $1,915.37. When Debtors filed their petition, they were four payments in arrears to BAC, including $745.52 in escrow payments.

Debtors' Chapter 13 plan, dated January 13, 2009, classified BAC as a Class 1 Secured Creditor and provided that Debtors would maintain their monthly postpetition payments of $1,918.00[5] to BAC though the Chapter 13 trustee and cure prepetition arrears scheduled at $5,000 with monthly payments of $238.10 beginning in the 15th month of the plan.

When notified of Debtors' bankruptcy, BAC performed an escrow analysis in accordance with its regular procedures. The "Escrow Account Review" statement dated January 20, 2009, indicated an escrow shortage of $660.12. Due to this shortage, BAC recalculated Debtors' monthly escrow payment at $311.58, which consisted of

$220.04 for insurance and taxes, $55.01 in "shortage payment"—the monthly amount needed to keep the escrow account from falling below zero, and $36.53 for a "reserve requirement" allowed by federal regulations to cover unexpected increases in taxes or insurance.

On February 19, 2009, BAC sent a Payment Change Notification (the "Notice") to debtor Alex Zotow, his bankruptcy counsel and the Chapter 13 trustee. The Notice showed that due to the new escrow payment of $311.58, Debtors' monthly payment to BAC would increase from $1,915.37 to $2,040.57, effective March 1, 2009. The statement contained the following disclaimer:

> This statement is being furnished *for informational purposes only* and should not be construed as an attempt to collect against you personally. While in the future, your obligation to Countrywide may or may not be discharged by operation of law, Countrywide will retain the ability to enforce its rights against the property securing this loan should there be a default.
>
> If you are presently involved in a Chapter 13 proceeding, please be advised that should this amount conflict with any order or requirement of the Court, you are required to obey all orders of the Court.

(Emphasis in original.) On February 24, 2009, the trustee objected to the confirmation of Debtors' plan on the ground that their proposed monthly plan payment of $2,665 was inadequate due to the increase in their monthly mortgage payment.

On February 27, 2009, BAC filed its proof of claim, asserting a secured claim

---

**3.** Although listed as an appellee, the trustee has not participated in this appeal.

**4.** The order confirming Debtors' plan indicates that BAC's second position deed of trust was valued at $0.00.

**5.** This amount is listed in Debtors' plan and differs by a few dollars from their monthly payment of $1915.37.

for the principal balance due on Debtors' mortgage of $156,785.36, prepetition arrears of $6,328.76, an escrow shortage of $197.43, and attorneys' fees of $300.

On March 17, 2009, Debtors objected to BAC's claim, contending that the $197.43 for escrow shortage undervalued the amount of their prepetition escrow arrears. Debtors maintained that $745.52 for escrow items—the amount they calculated for their prepetition escrow shortage—should have been included in the claim. They further alleged that BAC was collecting prepetition escrow arrears, through increased postpetition escrow deposits added to their monthly payment, in violation of § 362.

On November 18, 2009, the bankruptcy court held an evidentiary hearing on Debtors' claim objection, including their allegations regarding BAC's alleged stay violation. The bulk of the evidence concerned the proper method for calculating pre- and postpetition escrow arrears, with live testimony from Debtors' expert and BAC's witness.

Debtors also presented evidence regarding their damages for BAC's alleged stay violation. Debtors maintained they suffered emotional distress damages because Mrs. Zotow suffered from migraine headaches after learning that BAC had increased their monthly mortgage payments, which resulted in hospitalization expenses [6]

and lost income. Debtors argued they also suffered damages based on increased attorneys' and expert fees as a consequence of the trustee's objection to their plan and their having to object to BAC's incorrect claim.

The bankruptcy court made oral findings of fact and conclusions of law, sustaining Debtors' objection by disallowing BAC's proof of claim as filed, but allowing the claim without prepetition and pre-confirmation attorney's fees and a corrected escrow shortage. The court adopted Debtors' expert's report for its findings of fact. Relying on the Fifth Circuit's decision in *Campbell v. Countrywide Home Loans Inc.*, 545 F.3d 348 (5th Cir.2008) [7], the bankruptcy court stated its conclusions of law on the record, agreeing with Debtors that their prepetition escrow arrears should have been included in BAC's proof of claim. The court also concluded that BAC did not violate the automatic stay. In addition, the court found the evidence insufficient to support a finding of emotional distress or punitive damages. However, the court awarded Debtors' attorneys' fees in the amount of $1,250.[8] The court's ruling was reflected in a Civil Minute Order filed December 10, 2009. Debtors timely appealed the order.

On March 4, 2010, Debtors' Chapter 13 plan was confirmed.[9]

---

6. Mrs. Zotow testified that her out of pocket expense for hospitalization was a co-pay of $200.

7. We discuss the holdings in *Campbell* in Part V below.

8. The bankruptcy court did not state on the record the basis for the attorneys' fee award. Since Debtors had objected to BAC's proof of claim, we assume the award was based on the underlying contract. *See Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 448, 127 S.Ct. 1199, 167 L.Ed.2d 178 (2007)("[A]n otherwise enforceable con-

tract allocating attorney's fees (*i.e.*, one that is enforceable under substantive, nonbankruptcy law) is allowable in bankruptcy except where the Bankruptcy Code provides otherwise."); *see also*, Cal. Civ.Code § 1717 (2010). Neither party presented arguments in their briefs on the exact basis for the court's award of the fees nor was it an issue on appeal.

9. On October 13, 2009, Debtors' plan was confirmed. This order was vacated on November 13, 2009, because it was signed and entered prior to the resolution of Debtors' objection to BAC's proof of claim.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (B). We have jurisdiction under 28 U.S.C. § 158(a).

## III. ISSUE

Whether the bankruptcy court erred in deciding that BAC's acts did not violate the automatic stay under § 362.

## IV. STANDARD OF REVIEW

We review the issue of whether a creditor has violated the automatic stay de novo. *Sternberg v. Johnston,* 595 F.3d 937, 943 (9th Cir.2010).

## V. DISCUSSION

Since the bankruptcy court primarily relied on the Fifth Circuit's decision in *Campbell* for its ruling, it is beneficial to briefly review the case before addressing the merits of this appeal.

In *Campbell,* the lender (coincidentally Countrywide), filed a proof of claim that did not include unpaid escrow payments that accrued prepetition. *Campbell,* 545 F.3d at 351. Instead, the lender included language in its proof of claim which indicated that it intended to increase the debtors' postpetition monthly mortgage payments to recover an escrow shortage. *Id.*

The debtors filed an adversary proceeding against the lender, alleging that it was attempting to collect a prepetition debt (property taxes) by increasing their postpetition mortgage payments. At issue was (1) whether the debtors' unpaid prepetition escrow arrears for property taxes constituted a prepetition claim subject to the automatic stay under § 362 and (2) whether the lender's statement in a proof of claim about increased monthly mortgage payments, which included the debtors' missed prepetition escrow payments, violated the automatic stay.

In answering the first question, the bankruptcy court held that the lender had a prepetition claim for unpaid escrow arrears, based on the underlying loan documents, which was subject to the automatic stay. The Fifth Circuit affirmed this holding [10], noting that "[t]here was a right to the prepetition escrow payments—which matured into a claim on behalf of Countrywide—each time the [debtors] failed to make the payment." *Id.* at 354. The Fifth Circuit concluded that the debtors' unpaid escrow at the time of their petition constituted "a 'claim' for purposes of § 362, a holding that does not limit Countrywide's rights under RESPA or the Bankruptcy Code." *Id.* The appellate court further explained that the "automatic stay operates to halt collection of pre-petition claims, even those claims held by a creditor protected by the anti-modification of Section 1322(b)(2) . . . ." *Id.* The court emphasized its holding was a narrow one and expressly stated that it was refraining from addressing how or whether the stay affected the lender's rights to recalculate escrow payments in subsequent years. *Id.*

The bankruptcy court in *Campbell* also found that the lender had violated the stay by including in its proof of claim the statement that it would be increasing the debtors' mortgage payment postpetition to provide for the prepetition escrow shortage. *Id.* at 355. On this question, the Fifth Circuit reversed. The court noted that the lender did not collect this new amount or take any action outside the bankruptcy proceeding to collect it. *Id.* The court also

---

**10.** The lender apparently was granted the right to appeal the bankruptcy court's order directly to the Fifth Circuit.

observed that nothing barred a creditor from filing a proof of claim under § 501 of the Bankruptcy Code and, therefore, asserting a right to payment in a proof of claim did not constitute a violation of the stay. *Id.* at 356. Finally, the court reasoned that the Bankruptcy Code authorized creditors to file claims in the bankruptcy court and that any dispute over those claims may be addressed in that forum as part of the bankruptcy process. *Id.*

Here, the bankruptcy court agreed with the Fifth Circuit in *Campbell* that BAC should have included Debtors' prepetition escrow arrears in its proof of claim. The correctness of the bankruptcy court's ruling on this issue has not been questioned in this appeal. Rather, Debtors' sole challenge on appeal is whether the bankruptcy court improperly relied on *Campbell* when it concluded that BAC did not violate the stay.

Debtors argue that *Campbell* is factually distinguishable from the scenario here: i.e., in *Campbell,* the only action taken by the lender was the filing of a proof of claim which stated that the lender intended to increase the debtors' postpetition mortgage payments. Debtors assert that BAC's actions in this case include far more, violating § 362(a)(6); namely, BAC's acts of (1) sending them the Notice which increased their postpetition mortgage payments to improperly include prepetition escrow arrears, (2) the receipt of the increased postpetition mortgage payments from the Chapter 13 trustee, and (3) the application of those payments to prepetition debt.

Section 362(a)(6) provides that a petition filed under Chapter 13 operates as an automatic stay of "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." § 362(a)(6). We consider BAC's acts separately to determine whether any of its activities violated the automatic stay.

## A. Sending of the Notice Did Not Violate the Stay

 We begin our analysis with the premise that the automatic stay does not prevent all communications between a creditor and the debtor. *Morgan Guar. Trust Co. of N.Y. v. Am. Sav. and Loan Ass'n,* 804 F.2d 1487, 1491 (9th Cir.1986); *Connor v. Countrywide Bank, N.A. (In re Connor),* 366 B.R. 133, 136 (Bankr.D.Hawaii 2007). Whether a communication is a permissible or prohibited one is a fact-driven inquiry which makes any bright line test unworkable. *See Henry v. Assocs. Home Equity Servs., Inc.,* 272 B.R. 266, 278 (C.D.Cal.2002) (whether creditor's activities involved coercion or harassment is fact-specific inquiry); *Cousins v. CitiFinancial Mortgage Co. (In re Cousins),* 404 B.R. 281, 287 (Bankr.S.D.Ohio 2009) (noting that determining whether a violation of the automatic stay occurs can be complicated). However, case law provides us with some guidance in defining which creditor communications violate the stay.

 Prohibited communications include those where direct or circumstantial evidence shows the creditor's actions were geared toward collection of a prepetition debt, were accompanied by coercion or harassment, or otherwise put pressure on the debtor to pay. *Morgan,* 804 F.2d at 1491; *In re Draper,* 237 B.R. 502, 505–06 (Bankr.M.D.Fla.1999). But mere requests for payment and statements simply providing information to a debtor are permissible communications that do not run afoul of the stay. *Morgan,* 804 F.2d at 1491 (mere requests for payment are not barred); *Henry v. Assocs. Home Equity Servs., Inc. (In re Henry),* 266 B.R. 457, 472 (Bankr. C.D.Cal.2001) (if promissory note has ad-

justable interest rate, secured creditor may properly give notice of the changes in the interest rate); *Draper,* 237 B.R. at 506 (noting that statements provided for "informational purposes" should not request payment for amounts past due or enclose a payment coupon or return envelope); *Chase Manhattan Mortgage Corp. v. Padgett,* 268 B.R. 309, 314–15 (S.D.Fla.2001) (stating that § 362(a) does not prohibit mere notice to a mortgagor in bankruptcy of an advance or escrow deficiency).

Along these lines, we have recently recognized that Chapter 13 debtors often need information from their mortgage lenders post-confirmation, albeit in a different context. *Greenpoint Mortgage Funding, Inc. v. Herrera (In re Herrera),* 422 B.R. 698 (9th Cir. BAP 2010) (upholding various post-confirmation reporting and other duties imposed on mortgage lenders in Chapter 13 proceedings by addendum approved by judges in Central District of California). Likewise, information from a lender may be equally important to Chapter 13 debtors prior to the confirmation of their plan. *Connor,* 366 B.R. at 138.

■ In the end, one distinguishing factor between permissible and prohibited communications is evidence indicating harassment or coercion. When such evidence is present, a disclaimer on the communication that it was being sent for "informational purposes only" is ineffective. For example, the bankruptcy court in *Draper* found that the lender-creditor violated the automatic stay despite the disclaimer because the invoice included amounts past due, the lender included a payment coupon and envelope with its invoice, and the lender continued to send the invoices to debtor post-confirmation after the debtor and his attorney requested it to stop. *Draper,* 237 B.R. at 506.

The bankruptcy court in *Connor* reached the opposite result. In *Connor,* the statements, which included the principal balance of the loan, the amount of the monthly payment due, instructions on how to make a payment, a perforated, detachable payment coupon, and a return envelope, did not violate the stay when the debtor had an interest in receiving current information about the status of his mortgage in order to formulate a confirmable Chapter 13 plan. *Connor,* 366 B.R. at 138. Further, the debtor had not alleged in his complaint that the monthly statements were threatening or coercive. *Id.* The court reached a contrary result with respect to the statements sent after the debtor's Chapter 13 bankruptcy case was converted to Chapter 7, concluding that the debtor had no need for the information at that time.

■ Given these parameters, we conclude that, as a matter of law, the Notice sent by BAC to Debtors was informational in nature and thus not in violation of the stay. First, unlike *Draper,* the Notice sent by BAC was not in the nature of an invoice. Rather, the Notice merely set forth the fact of the debt, caused by the recent escrow analysis which resulted in an increase to Debtors' monthly escrow deposit. *E.g., Morgan,* 804 F.2d at 1491 n. 4. Second, BAC did not send the Notice with a payment coupon or envelope. It is obvious that the payment coupons and return envelopes sent to the debtor after the confirmation of his Chapter 13 plan in *Draper* did not provide information and had no purpose other than to collect the debt outside the bankruptcy. *See also, Cousins,* 404 B.R. at 287–88 (noting that information about past or current balance amounts sent prior to confirmation of the debtor's plan might be helpful to determine what was owed, but an attached payment coupon does not have such an infor-

mational purpose). Put simply, the record reveals no indication that BAC took any steps to collect the prepetition escrow arrearages from Debtors outside the bankruptcy court.

Third and last, BAC sent a single Notice to debtor Alex Zotow, Debtors' attorney and the trustee prior to the confirmation of Debtors' Chapter 13 plan. Debtors had an interest in and need for the information contained in the Notice since any increase in their monthly escrow payments would affect the feasibility of their plan. *See Pultz v. NovaStar Mortgage, Inc. (In re Pultz)*, 400 B.R. 185, 190–92 (Bankr.D.Md. 2008) (noting that sending of single loan statement was useful to the debtor for forecasting the amount of the unsecured debt she could pay through her Chapter 13 plan).

In sum, these facts, which are undisputed, do not rise to the level of coercion or harassment and we do not construe them as putting pressure on Debtors to pay. Accordingly, we hold that the Notice was a permissible communication that did not violate the automatic stay.

Finally, we are reluctant to conclude that BAC should be penalized because the bankruptcy court later determined that BAC improperly included prepetition escrow debt in its postpetition calculations in the context of a claim objection. Although the Notice apparently was the catalyst for the increased payments made by the trustee to BAC prior to the confirmation of Debtors' plan, Debtors could have challenged the payment amount immediately by motion to the court rather than waiting until the error was highlighted during Debtors' claim objection.

**B. Receiving Postpetition Payments From the Chapter 13 Trustee Did Not Violate the Stay**

▮ Debtors also assert that BAC "collected" the prepetition escrow debt from the Chapter 13 trustee in violation of § 362(a)(6). We are unpersuaded by this argument. The language of § 362(a)(6) makes it clear that some act to collect a prepetition debt is necessary for a stay violation. Here, BAC received the payments from the trustee pursuant to the Eastern District of California's General Order No. 05–03, which is applicable to Chapter 13 cases. Paragraph 5 is entitled "Plan Payments", which provides in relevant part under subsection (c):

> (1) post-petition contract installment payments to Class 1 claim holders *shall be made* by the Trustee whether or not the chapter 13 plan has been confirmed and whether or not the holder of the claim has filed a proof of claim.

> (2) To assist the Trustee in making post-petition contract installment payments to Class 1 claim holders, the debtor shall complete the Class 1 Checklist and Authorization to Release Information, Exhibit 5, and deliver it to the Trustee within 15 calendar days of filing the petition. This document shall not be filed with the court.

(Emphasis added). E.D. Cal. Gen. Order No. 05–03 (Oct. 28, 2005, effective Oct. 17, 2005) (as amended by Gen. Order 08–02). BAC did not engage in any act to possess or collect these payments because it received them as part of the chapter 13 process. Thus, BAC was lawfully in possession of these payments at the time it allegedly misapplied them.

This result is consistent with the Fifth Circuit's decision in *Campbell*, which holds that a creditor's legal actions taken in a bankruptcy proceeding do not violate the stay. *Campbell*, 545 F.3d at 354. Just as a lender's request for increased postpetition payments that improperly included prepetition debt in a proof of claim does not violate the stay, BAC's receipt of pay-

ments from a Chapter 13 trustee is not an act proscribed by § 362(a)(6).

 Finally, Debtors advance policy reasons for us to consider in our analysis. Debtors contend that if BAC is not held accountable, then it would be difficult, if not impossible, for them to realize a financial fresh start. Debtors, however, miss the forest for the trees by overlooking the reasons for the automatic stay.

> The statute seeks to ensure orderly administration of the debtor's estate to protect the creditors' right to equality of distribution, to provide a breathing spell for the debtor, and to maintain the status quo. An additional purpose of the stay, to which Congress specifically addressed in subsection 362(a)(6), is to prevent harassment of the debtor by sophisticated creditors.

*Morgan,* 804 F.2d at 1491 (citations omitted).

The result we reach does not undermine either the "fresh start" provisions of the Bankruptcy Code or the "breathing spell" offered by the automatic stay. Debtors' "fresh start" was protected by several procedural requirements surrounding their objection to BAC's proof of claim and confirmation of their Chapter 13 plan. Debtors' "breathing spell" also was sufficiently protected since the respite is not from communication with creditors, but from the threat of immediate action by creditors, such as a foreclosure or a lawsuit. *Id.*

 We also cannot construe BAC's conduct as interfering with the orderly administration of Debtors' estate. BAC's single notice sent pre-confirmation did not jeopardize Debtors' plan or the process for distributing funds to other creditors. Generally, the injunction of § 362 serves to control creditor action by encouraging creditors to participate in the bankruptcy

process to resolve their claims. *See Harchar v. United States (In re Harchar),* 393 B.R. 160, 179 (Bankr.N.D.Ohio 2008). That is exactly what BAC did here. And that process worked: BAC's incorrect proof of claim was brought to the bankruptcy court's attention, and the court properly ordered the adjustment of the proof of claim.

 Due to our holding, it is unnecessary to address Debtors' remaining arguments concerning their right to recover punitive or other damages under § 362(k)(1). However, we address two housekeeping matters relating to damages. Debtors argue for the first time in their reply brief that we should remand this matter because the bankruptcy court failed to order BAC to refund the portion of postpetition payments which were improper. Debtors' failure to "specifically and distinctly" address this issue in their opening brief constitutes a waiver. *Alcaraz v. INS,* 384 F.3d 1150, 1161 (9th Cir.2004). There is nothing prohibiting Debtors from seeking this remedy from the bankruptcy court.

In addition, Debtors contend that BAC continues to violate the stay by collecting the increased mortgage payments post-confirmation. This alleged stay violation is different from the one raised in this appeal. Accordingly, Debtors should have presented this argument to the bankruptcy court in the first instance. *United Student Funds, Inc. v. Wylie (In re Wylie),* 349 B.R. 204, 213 (9th Cir. BAP 2006) ("Absent exceptional circumstances, this court generally will not consider arguments raised for the first time on appeal.").

## VI. CONCLUSION

For these reasons, we AFFIRM.