
NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>DAVID ORLANSKY & SHARON LYNN ORLANSKY,<br>　　　　　　　Debtors. | BAP No.  NV-22-1181-GCB<br><br>Bk. No. 2:20-bk-15132-NMC |
| DAVID ORLANSKY; SHARON LYNN ORLANSKY,<br>　　　　　　　Appellants,<br>v.<br>QUICKEN LOANS, LLC, fka QUICKEN LOANS INC.,<br>　　　　　　　Appellee. | MEMORANDUM* |

Appeal from the United States Bankruptcy Court
for the District of Nevada
Natalie M. Cox, Bankruptcy Judge, Presiding

Before: GAN, CORBIT, and BRAND, Bankruptcy Judges.

## INTRODUCTION

Chapter 13[1] debtors David and Sharon Lynn Orlansky ("Debtors")

appeal the bankruptcy court's order denying their motion for sanctions

---

* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

against creditor Rocket Mortgage, LLC f/k/a Quicken Loans, LLC f/k/a Quicken Loans, Inc. ("Rocket") for its alleged willful violations of § 362(a)(1), (3), and (6). Debtors asserted that Rocket violated the automatic stay by including on Debtors' billing statements $950 for attorney's fees incurred in connection with the case and by collecting and retaining those fees. The bankruptcy court held that the billing statements were permitted informational communications that did not violate the stay.

Although the statements included a standard disclaimer that they were provided for informational purposes, Rocket listed the attorney's fees as part of the total amount due, instead of including them with prepetition arrears in a section that clearly indicated amounts to be paid though the plan, separate from ongoing monthly payments. By including the fees as part of Debtors' ongoing monthly payments, Rocket was attempting to coerce payment and collect a prepetition debt outside of the bankruptcy process. Any informational purpose served by including the attorney's fees on the monthly statements was severely undercut by separating those fees from other prepetition amounts and adding them to the total monthly payment. We REVERSE and REMAND.

## FACTS

Debtors filed their chapter 13 petition in October 2020. Rocket filed a proof of claim, evidencing a claim of $160,855.88, secured by Debtors' residence. Rocket claimed a prepetition arrearage of $52.21 based on a projected escrow shortage. Pursuant to Rule 3002.1(c), Rocket then filed

Official Form 410S2, "Notice of Postpetition Mortgage Fees, Expenses, and Charges" ("Fee Notice"), in which Rocket asserted a claim for attorney's fees consisting of $500 for filing the proof of claim and $450 for reviewing Debtors' chapter 13 plan.

After the petition date, Rocket continued sending monthly billing statements which included the disclaimer:

> Our records show that either you are a debtor in bankruptcy or you discharged personal liability for your mortgage loan in bankruptcy. We are sending this statement to you for information and compliance purposes only. It is not an attempt to collect a debt against you. If you want to stop receiving statements, write to us . . . .

On the billing statements, Rocket listed the asserted prepetition arrears in a section entitled "Amounts Past Due Before Bankruptcy Filing," which contained the additional informational statement:

> This box shows amounts that were past due when you filed for bankruptcy. It may also include other amounts on your mortgage loan. The Trustee is sending us the payments shown here. These are separate from your regular monthly mortgage payment.

In December 2020, Rocket began listing $950 on Debtors' billing statements as "Advances on Your Behalf" under the section entitled "Next Payment Breakdown (Post-Petition Payment)." Unlike the prepetition arrears, the amounts in the Next Payment Breakdown (Post-Petition)

3

section were included in the "Total Payment Amount," which showed the amount due on the statement due date.[2]

Debtors paid the $950 fees by June 2021. Thereafter, Rocket continued sending statements listing $950 as "Advances on Your Behalf" but also listing $950 as "Partial payment (Unapplied)," which caused the "Total Payment Amount" to return to the normal monthly payment.

In November 2021, Debtors filed an objection to Rocket's proof of claim. Debtors asserted they were always current on their mortgage and, because the $52.21 claimed by Rocket was for a future escrow shortage, it was not a legitimate arrearage. They also argued that the $950 attorney's fee claim was unnecessary and unwarranted under the loan agreement because Debtors were not in default.

In response, Rocket agreed to amend its proof of claim to remove the prepetition arrears, but it maintained that its attorney's fee claim was reasonable and recoverable irrespective of whether the loan was in default. Rocket cited language in the deed of trust that allowed for attorney's fees if the creditor was required to participate in a bankruptcy action to protect its interest.

At the hearing on Debtors' claim objection, the bankruptcy court reasoned that the deed of trust authorized Rocket to file a claim for

---

[2] According to Debtors, the "Total Payment Amount" was also stated on the payment coupons attached to the statements. Because Debtors detached and returned the coupons with their payments, the statements in the record do not include the original coupons.

attorney's fees, but Debtors had not yet shown that the asserted fees were unreasonable. The court continued the hearing and requested supplemental briefing.

Rocket subsequently filed a notice of withdrawal of the Fee Notice, and it refunded $950 to Debtors. Rocket then amended its proof of claim to remove the asserted $52.21 arrearage.

In February 2022, Debtors filed a motion for contempt and argued that Rocket willfully violated the automatic stay by including the $950 attorney's fee claim on their monthly billing statements. They further contended that Rocket violated the stay by wrongfully taking possession of, and retaining, Debtors' $950 payment, which they characterized as property of the estate.

In opposing the motion for contempt, Rocket argued that it did not violate the stay because Rule 3002.1(c) specifically authorizes a creditor to provide notice of fees incurred after the petition date in connection with a claim secured by Debtors' principal residence. It maintained that the attorney's fees were not subject to the automatic stay because they arose from postpetition actions, and there was no coercion or harassment involved in its billing statements, which were provided for informational purposes. Rocket noted that, rather than contacting Rocket about the fees, Debtors paid $950 after waiting over five months, then waited several months to file their motion for contempt. Rocket argued the fees were

reasonable and authorized under the loan documents, and because it withdrew the Fee Notice, the contempt motion was moot.

Though the fees were assessed postpetition, Debtors argued they were part of Rocket's prepetition claim under the holding of *SNTL Corp. v. Centre Insurance Co. (In re SNTL Corp.)*, 571 F.3d 826 (9th Cir. 2009). They suggested Rocket was conflating its Fee Notice, which was required under Rule 3002.1(c), with its improper addition of attorney's fees to Debtors' monthly billing statements. They argued that Rocket added the fees to the billing statements to collect the fees, which Debtors paid out of fear, and refunding the fees did not negate Rocket's stay violation.

After holding the continued hearing on Debtors' claim objection and the hearing on Debtors' motion for contempt, the court took both matters under submission. It entered a written order resolving both issues on August 18, 2022.

The bankruptcy court sustained Debtors' claim objection, and it determined that the attorney's fees were a prepetition claim. But the court held that Rocket did not violate the automatic stay by including the fees in the billing statements because the statements were permitted communications, and Debtors had an interest in receiving information about the status of their mortgage to formulate their plan. The bankruptcy court reasoned that Debtors had notice of the fees in November 2020, pursuant to the Fee Notice, but did not immediately dispute the fees by filing a motion under Rule 3002.1(e). The court concluded that Debtors

paid the fees voluntarily, not because of undue pressure caused by the billing statements. Debtors timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court err by denying Debtors' motion for contempt for a willful violation of the automatic stay?

## STANDARD OF REVIEW

We review de novo whether a creditor has violated the automatic stay. *Zotow v. Johnson (In re Zotow)*, 432 B.R. 252, 257 (9th Cir. BAP 2010). Under de novo review, "we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014).

## DISCUSSION

Upon filing a bankruptcy petition, the Bankruptcy Code protects a debtor's interests by imposing an automatic stay on collection of prepetition debts. *City of Chicago v. Fulton*, 141 S. Ct. 585, 589 (2021). The automatic stay "is designed to effect an immediate freeze of the *status quo* by precluding and nullifying post-petition actions, judicial or nonjudicial, in nonbankruptcy fora against the debtor or affecting the property of the estate." *Mwangi v. Wells Fargo Bank, N.A. (In re Mwangi)*, 764 F.3d 1168, 1173 (9th Cir. 2014) (quoting *Hillis Motors, Inc. v. Haw. Auto.*

7

*Dealers' Ass'n*, 997 F.2d 581, 585 (9th Cir. 1993)). The specific actions subject to the automatic stay are described in § 362(a).

The parties agree that Rocket's claim for attorney's fee is a prepetition debt subject to the automatic stay. Debtors argue that Rocket violated § 362(a)(1) and (a)(6) by including its claim for attorney's fees on Debtors' billing statements, which they assert was an attempt to collect a prepetition debt. Debtors also argue that Rocket violated § 362(a)(3) by retaining the payment, which they characterize as wrongfully withholding possession of property of the estate. The pertinent subsections provide that the filing of a bankruptcy petition creates a stay of:

> (1) the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
> . . .
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
> . . .
> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title[.]

11 U.S.C. § 362(a).

Section 362(k)(1) requires that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages,

including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." A creditor commits a willful violation of the stay if it knows of the stay and its actions that violate the stay are intentional. *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1215 (9th Cir. 2002). Because the bankruptcy court determined that the statements did not constitute a stay violation, it did not decide whether Debtors were entitled to damages under § 362(k).

Debtors do not identify any "action or proceeding" that Rocket commenced or continued against them. Thus, § 362(a)(1) is inapplicable. Assuming Debtors made the payment from estate property, the payment ceased to be estate property once Rocket received and deposited the funds into its own account. *See Cano v. GMAC Mortg. Corp.*, 410 B.R. 506, 524-25 (Bankr. S.D. Tex. 2009) (citing *Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 21 (1995)). Additionally, "mere retention of property does not violate § 362(a)(3)," *Fulton*, 141 S. Ct. at 589, and thus, Rocket's actions did not violate § 362(a)(3).

However, communications from a creditor can constitute an "act to collect a prepetition debt" under § 362(a)(6). Section 362(a)(6) does not prohibit all communications from a creditor to a debtor. *In re Zotow*, 432 B.R. at 258 (citing *Morgan Guar. Tr. Co. of N.Y. v. Am. Sav. & Loan Ass'n*, 804 F.2d 1487, 1491 (9th Cir. 1986); *Connor v. Countrywide Bank, N.A. (In re Connor)*, 366 B.R. 133, 136 (Bankr. D. Haw. 2007)). "[M]ere requests for payment" alone do not violate the automatic stay. *Morgan*, 804 F.2d at 1491.

And because information from a mortgage lender is important to a chapter 13 debtor prior to plan confirmation, statements "simply providing information to a debtor are permissible communications that do not run afoul of the stay." *In re Zotow*, 432 B.R. at 258 (citations omitted).

On the other hand, "[p]rohibited communications include those where direct or circumstantial evidence shows the creditor's actions were geared toward collection of a prepetition debt, were accompanied by coercion or harassment, or otherwise put pressure on the debtor to pay." *Id.* When evidence of harassment or coercion is present, a disclaimer that the billing statement is for "informational purposes only" is ineffective. *Id.* at 259.

Whether a particular communication from a creditor violates the stay is a "fact-driven inquiry which makes any bright line test unworkable." *Id.* at 258 (citing *Henry v. Assocs. Home Equity Servs., Inc.*, 272 B.R. 266, 278 (C.D. Cal. 2002)). Consequently, we must examine both the substance and the context of a particular communication to determine whether it violates the stay.

Although the billing statements included a standard disclaimer that they were for informational purposes, the substance and context show they were geared toward collecting the attorney's fees. Had Rocket listed the attorney's fees in the section with prepetition arrears—which clearly indicated the fees were separate from ongoing payments and would be paid through the plan—we would conclude that the statements were

merely informational. But, by separating the fees from the other amounts to be paid through the plan, and instead listing the fees as part of regular monthly payments, we are left with only one reasonable interpretation: unlike the asserted prepetition arrears, Rocket sought immediate payment of the attorney's fees, to be paid with ongoing postpetition mortgage payments.

Debtors ordinarily expect negative consequences resulting from a failure to make ongoing mortgage payments, and here, Debtors reasonably expected that payment of the total monthly amount was necessary to keep their mortgage current. Rocket's inclusion of the fees in the total monthly amount due thus operated in a manner to pressure or coerce payment.

Rocket argues that because it had a right to charge fees under the deed of trust, and it provided the Fee Notice under Rule 3002.1(c), it did not violate the stay by including the fees on Debtors' statements. Rocket asserts that Debtors had a procedural avenue to contest the fees under Rule 3002.1(e) but waited several months, and therefore, the court did not err by denying sanctions.

We agree that Rocket had a right, and an obligation, to file the Fee Notice, but that does not insulate it from stay violations caused by subsequent attempts to collect the fees directly from Debtors. Rule 3002.1(c) requires a lender to provide notice of fees, expenses, or charges incurred in connection with its clam which are recoverable against a debtor or a

11

debtor's property.[3] Official Form 410S2 states that a Rule 3002.1(c) notice is filed as a supplement to the creditor's proof of claim, and section 4.5 of Nevada's form chapter 13 plan specifically provides for payment through the plan of fees asserted under Rule 3002.1(c).

Any informational purpose served by including the fees on Debtors' monthly statements was undercut by the official procedure for providing notice of the fees. Once Rocket filed the Fee Notice, Debtors had to either dispute the fees under Rule 3002.1(e) or pay the claim through their plan. In other words, Debtors had to address the asserted fees as part of the bankruptcy process.[4] Moreover, because Rocket separated the attorney's fees from other prepetition claims, the "informational purpose" of the billing statements appears to have been that the fees were different from other prepetition claims.

In holding that the statements violated the automatic stay, we stress that the context of creditor communications is relevant. Rocket could have easily averted the violation by listing the fees with prepetition arrears in the section which indicated those amounts were not part of ongoing payments. It is incumbent upon creditors who send postpetition

---

[3] The notice is mandatory. Rule 3002.1(i) allows the court to sanction a creditor for failure to provide notice of fees, expenses, and charges under Rule 3002.1(c) by precluding the creditor from later presenting evidence omitted from the required notice, and by awarding appropriate relief, including reasonable expenses and attorney's fees.

[4] Debtors filed an amended plan in which they listed the $950 claim and proposed to stay payment pending their objection.

communications to clarify they are not attempting to collect prepetition debts. Here, Rocket created a situation where the standard disclaimer was clearly contradicted by a demand for payment. Though we expect damages in this case to be relatively minimal, we conclude that the statements constituted a violation of § 362(a)(6).

## CONCLUSION

Based on the foregoing, we REVERSE and REMAND the bankruptcy court's order denying Debtors' motion for contempt.